UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13CV622 AGF |
| | ) | |
| CHERYL THOMPSON and IAN | ) | |
| WALLACE, in Their Official and | ) | |
| Individual Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion for summary judgment (Doc. No. 84) as supplemented (Doc. No. 92) on Plaintiff Michael Thomas's third amended complaint. Thomas is a Missouri inmate. He brings claims under 42 U.S.C. against two prison officials – Ian Wallace, Warden at Missouri's Southeast Correctional Center ("SECC"), and Cheryl Thompson, an administrative segregation Housing Unit Manager at SECC – for violation of his constitutional rights related to his placement and retention in administrative segregation. For the reasons set forth below, Defendants' motion for summary judgment shall be granted in part and denied in part.

## BACKGROUND

Plaintiff initiated this action *pro se* on April 1, 2013, against 11 prison officials, including Wallace and Thompson, asserting that he had been in solitary confinement since June 2012, in violation of his due process rights. On June 25, 2013, Plaintiff filed a

motion for a preliminary injunction. The Court appointed counsel who filed an amended complaint, clarifying that Plaintiff was in administrative segregation, not solitary confinement. A hearing on the motion for a preliminary injunction was held on October 24, 2013. By Order dated October 29, 2013, the motion was dismissed pursuant to an agreement reached by the parties. On December 4, 2013, Plaintiff filed a second amended complaint against the same 11 Defendants, without specifying in what capacity they were being sued. Plaintiff was released from administrative segregation on December 21, 2013.

By Order dated January 28, 2014, the Court granted the motion to dismiss filed by all Defendants except Thompson and Wallace. On September 15, 2014, Thompson and Wallace filed the motion for summary judgment now under consideration. On October 6, 2014, Plaintiff filed a response to the motion for summary judgment, as well as a motion for leave to file a third amended complaint to make it clear that Thompson and Wallace were being sued in both their official and individual capacities. On October 22, 2014, the Court granted the motion for leave and Plaintiff's third amended complaint, naming only Thompson and Wallace as Defendants and specifying that they were being sued in both their official and individual capacities, was filed.

Plaintiff asserts three claims in his third amended complaint. In Count I he asserts that Defendants' failure to provide him "adequate exercise, personal contacts and basic necessities" while he was in administrative segregation constituted cruel and unusual punishment, and that Defendants showed a deliberate indifference to Plaintiff's health and safety, in violation of the Eighth (and Fourteenth) Amendment. (Doc. No. 88 at 5.)

2

In Count II he claims that placing him in administrative segregation in the first place and retaining him there for so long violated his due process rights because he was not guilty of the initial conduct violation and the reviews of his retention in administrative segregation were meaningless. And in Count III he maintains that on June 7, 2013 he was moved to a more restrictive administrative segregation unit in retaliation for filing the action. He seeks actual and punitive damages.

The evidence of record, including the testimony at the October 24, 2013 preliminary injunction hearing, establishes that Plaintiff, who was incarcerated upon guilty pleas to several felonies including forcible rape and sodomy, was placed in administrative segregation in June 2012, after being charged with sexually assaulting another inmate. In July 2012, following an internal investigation, Plaintiff was found guilty of the assault and was assigned to remain in administrative segregation. Plaintiff was transferred to SECC on August 14, 2012, where he was assigned to Housing Unit 2, an administrative segregation unit in which inmates were double celled.

On December 1, 2012, and January 15, 2013, Plaintiff was found guilty of minor rule violations. As noted above, on April 1, 2013, Plaintiff filed his pro se complaint in this action. On April 6 and April 9, 2013, he received two more minor conduct violations. During the time Plaintiff was in administrative segregation he received periodic reviews of his classification; each time he was kept in administrative segregation based primarily, if not solely, upon the serious nature of the initial conduct violation of sexual assault.

On June 6, 2013, the classification committee submitted a request for a 12-month extension of Plaintiff's administrative segregation. On June 7, 2013, Plaintiff was moved from a two-person cell in Housing Unit 2 to a one person cell in Housing Unit 1, also an administrative segregation unit, but more restrictive than Housing Unit 2. On June 14, 2013, the 12-month extension was approved. A prison policy calls for a psychological evaluation of prisoners before such an extension is granted, but the record is devoid of such an evaluation for Plaintiff.

At the October 24, 2013 hearing, Wallace testified that Plaintiff's initial placement in a two-person cell (Housing Unit 2) at SECC was an error – he should have been placed in a one-person cell (Housing Unit 1). Plaintiff testified that at a review hearing on July 19, 2013, Thompson told him that she was keeping him in administrative segregation, "because I can." On August 30, 2013, as Wallace was going through Housing Unit 1, Plaintiff spoke to Wallace from Plaintiff's cell and asked Wallace when he would be released from administrative segregation. Conflicting evidence was presented as to Wallace's response, with Plaintiff and three other inmates testifying that Wallace responded that had Plaintiff not filed his lawsuit, he would have been out of administrative segregation. They also asserted that Wallace used racial slurs. Wallace denied making the statements, and testified that he did not know about the present lawsuit before September 2013.

Plaintiff testified that on October 16, 2013, he was moved to another floor in administrative segregation where the conditions were more adverse. He was not

provided with an explanation of goals he could achieve to be returned to Housing Unit 2. The policy manual related to administrative segregation reviews provides:

> Promotion from housing unit #1 to housing unit #2 will be results-driven and based upon the offender successfully meeting goals set during regularly scheduled administrative segregation hearings. Goals and time frames for promotion will be specific for each offender and documented on the classification hearing form.

Plaintiff testified that while he was in Housing Unit 1, Thompson had his windows covered for about 15 days, such that he could not see outside and was in total darkness, and that the cells in administrative segregation were filthy and infested with rodents. (Doc. No. 85-2 at 14.) He also testified that he filed prison complaints about the dirt and infestation, but nothing was done. *Id*. at 19. As noted above, on December 21, 2013, Plaintiff was released from administrative segregation.

Defendants have submitted the prison investigation records supporting Plaintiff's June 2012 conduct violation for sexual assault, and the affidavit of an individual named Regina Beggs, attesting that inmates in administrative segregation have access to rags to clean their cells on a regular basis and are given cleaning supplies on a weekly basis. (Doc. No. 85-4.)

Defendants argue that Beggs' affidavit defeats Plaintiff's claim based on the condition of his cells, and that the duration of his term in administrative segregation – 19 months – falls short of a violation of his Fourteenth and Eighth Amendment rights. Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claim as all conduct violations were properly issued and

5

supported, and Plaintiff's move to the more restrictive section of administrative segregation was as a result of those conduct violations. Defendants also argue that they are entitled to summary judgment based on qualified immunity with respect to all claims because Plaintiff has failed to offer any evidence that Defendants violated any clearly established constitutional right.

Plaintiff argues Defendants should be denied summary judgment because there are material factual disputes as to the condition of the cells he was placed in, and as to whether his moves to more restrictive administrative segregation units, as well as his retention in administrative segregation, after he filed this lawsuit was in retaliation for filing the lawsuit.

## DISCUSSION

### Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted). "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe v. Cnty. of St. Louis, Mo*., 690 F.3d 1004, 1011(8th Cir. 2012) (citation omitted).

**Qualified Immunity**

The Supreme Court recently explained the doctrine of qualified immunity as follows:

> An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.

*Plumkoff v. Rickard*, 134 S. Ct. 2012, 2023 (2013).

A court must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.*; *see also Blazek v. City of Iowa City*, 761 F.3d 920, 922-23 (8th Cir. 2014). In considering the question of qualified immunity, a district court must determine which facts are genuinely disputed and view those facts favorable to the nonmovant "as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *Handt v. Lynch*, 681 F.3d 939, 945 (8th Cir. 2012) (citation omitted). "Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiff[], however, must demonstrate that the law is clearly established." *Harrington v. City of Council Bluffs, Iowa,* 678 F.3d 676, 679 (8th Cir. 2012) (citation omitted).

**Placement in and Duration of Administrative Segregation**

For the Due Process Clause to be implicated by assignment to administrative segregation, an inmate must be subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Courts do not consider the procedures used to confine the inmate in segregation. *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010); *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003) ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."). Thus the Court will grant Defendants summary judgment on Plaintiff's claim that his initial placement in administrative segregation was unjustified.

But an extended duration in administrative segregation could implicate an inmate's liberty interest in due process. W*illiams v. Norris*, 277 F. App'x 647, 648-49 (8th Cir. 2008); *cf. Wilkenson v. Austin*, 545 U.S. 209, 224 (2005) (holding that under *Sandin*, inmates had a liberty interest in avoiding assignment to a state's supermax prison). In *Williams*, the Eighth Circuit found a liberty interest where an inmate was assigned to administrative segregation for 12 years. The Court cited with approval *Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007), *rev'd on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009), noting that the Second Circuit has generally found that segregation of longer than 305 days in standard "special housing unit" conditions was sufficiently atypical to require procedural due process protection under *Sandin*.

In *Orr*, 610 F.3d at 1033-34, the Eighth Circuit held that nine months in administrative segregation did not trigger the protections of due process. And in

8

*Hemphill v. Delo*, 124 F.3d 208 (table), 1997 WL 581079 at *2 (8th Cir. Sept. 22, 1997), the Eighth Circuit held that four days of lockdown, 30 days in punitive disciplinary segregation, and 290 days in administrative segregation was not an "atypical and significant hardship" under *Sandin*. Here, Plaintiff was in administrative segregation for approximately 19 months. The Court believes that the Eighth Circuit would find that Plaintiff's 19 months in administrative segregation at SECC triggered due process protections. *See Morgan v. Wallace*, No. 1:13CV13 SNLJ, 2014 WL 3557643, at *6 (E.D. Mo. July 18, 2014) (assuming that the plaintiff who was in administrative segregation for a little more than a year at SECC was entitled to due process).

"Once a liberty interest is established, the next question is what process is due." *Williams*, 277 F. App'x at 649. In *Williams*, the Eighth Circuit held that "for an ad seg inmate, the Constitution requires no more than the process Williams received – reviews at 60-day intervals at which Williams could make statements and present evidence, and annual meetings with a warden – provided such reviews were meaningful." *Id*. The Court then held that the district court had erred in granting the prison officials summary judgment because there remained an unresolved fact issue as to whether the plaintiff actually received meaningful reviews. *Id*. Construing the facts in the light most favorable to Plaintiff, this Court believes that a similar fact question remains unresolved here, especially with respect to the period following the filing of the present lawsuit. Thus Defendants' motion for summary judgment will be denied with respect to Plaintiff's due process claim based on his retention in administrative segregation for 19 months. *See Morgan*, 2014 WL 3557643, at *6-7 (denying summary judgment where factual

9

questions remained as to whether administrative segregation review hearings were meaningful).

Furthermore, the Court does not believe that Defendants are entitled to qualified immunity on this claim, because any reasonable prison official in Defendants' shoes would have understood from existing precedent that Plaintiff, who was in administrative segregation for 19 months, was entitled to meaningful review of his continued confinement in administrative segregation. *See id.* (denying prison officials qualified immunity because "[i]t is clearly established that where an inmate is held in segregation for a prolonged or indefinite period of time, due process requires that his situation be reviewed periodically in a meaningful way and by relevant standards to determine whether he should be retained in segregation or returned to population.")

**Conditions of Confinement**

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "[I]nmates are entitled to reasonably adequate sanitation [and] personal hygiene . . . particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). In order to support an Eighth Amendment violation, a prisoner must prove the existence of objectively harsh conditions of confinement, together with a subjectively culpable state of mind by prison officials in condoning or creating the conditions. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993).

Here, Plaintiff testified that the cells in administrative segregation were dirty and infested with rodents, and that he filed prison complaints about this but nothing was done.

The Court does not believe that Beggs' affidavit establishes that there are no material factual questions as to the conditions of the cells in which Plaintiff was confined for 19 months, nor as to Defendants' knowledge of the alleged condition. "[T]the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis." *Smith*, 269 F.3d at 269. Summary judgment in favor of Defendants on this claim too shall therefore be denied. Defendants are not entitled to qualified immunity on this claim, because a reasonable prison official would know that allowing a prisoner to live in filthy, rodent-infested cells for 19 months would be a violation of the prisoner's clearly established rights.

**Retaliation**

A prisoner has a First Amendment right to petition the courts to redress his constitutional claims, and prison officials are precluded from penalizing a prisoner for exercising those rights. *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010). This right to be free from retaliation in the prison context "has been clearly established in the Eighth Circuit for more than twenty years." *Taylor v. Bailey*, No. 4:12-CV-614 CAS, 2014 WL 2968808, at *6 (E.D. Mo. July 1, 2014). To prevail on such a §1983 retaliation claim, a plaintiff must demonstrate "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *see also Taylor,* 2014 WL 2968808, at *6 (denying summary judgment to prison official on a prisoner's claim that the official had him

placed in administrative segregation on a fabricated charge in retaliation for the prisoner filing a lawsuit against other prison officials).

Here, a factual dispute exists as to whether Wallace told Plaintiff on August 30, 2013, that Plaintiff would have been out of administrative segregation had he not filed this lawsuit. It is also not clear what role Thompson had in moving Plaintiff to more restrictive housing after he filed this lawsuit and/or in keeping him in administrative segregation until December 21, 2013. This claim is also not subject to summary judgment in Defendants' favor on the basis of qualified immunity, because based on Eighth Circuit precedent, it is clearly established that a prison official may violate a prisoner's constitutional rights by keeping him in administrative segregation in retaliation for the prisoner's prior exercise of his constitutional rights. *See Taylor*, 2014 WL 2968808, at *8.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (Doc. No. 84) as supplemented (Doc. No. 92) is **GRANTED** with respect to Plaintiff's claim that his initial placement in administrative segregation was unjustified, and **DENIED** with respect to his other claims.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of January, 2014.